24-1169 Dr. Edgar L. Chaar v. NYU All the commotion. All right. Attorney Boyce. Good morning, Your Honor, and may it please the court. My name is David Boyce, and I represent the plaintiff appellant. As the court is aware, we have two claims, a claim for retaliation and a claim for a hostile work environment. In considering the argument today, I would like the court to keep in mind two principles, two facts, two circumstances. One, the appellee cites no case, and I am aware of none other than the decision below, where a claim for retaliation has been dismissed on summary judgment when the decision maker has admitted that action was taken, adverse employment action was taken, because the plaintiff filed a discrimination complaint. So your defendant would dispute that, I'm sorry, your colleague on the other side would dispute that characterization. What they would say was that he was passed over for political reasons, which doesn't show retaliation. What would be your response to that? Well, I think there are two responses, Your Honor. First, Dr. Elchar testified that in the fall of 2018, he had a meeting with Dr. Bartelli, and he was told, quote. It's better to lie me, right? What? Better to lie me. I thought I heard you. Did you say better to lie me? Yes. We are not appointing the chair because of your complaint to OEO. We need to have a chilling period, and you should have been the acting chair. You should have been the acting chair, but because of your complaint, we can't, I can't put you there. The appendix at 280. Now, that was Dr. Elchar's testimony. That, I submit, is enough by itself to get by summary judgment. That, at a minimum, raises a jury question, but it's more than that, Your Honor. Later that month, December of 2018, Dr. Elchar wrote to the OEO to complain of retaliation. He writes, quote, I was told by Veteran Tommy that the decision about hiring and promotion was made not to post the position or form a search committee, specifically because I made a complaint over a year ago. So, was the district court wrong to conclude that the evidence of post-October 2017 incidences was an admissible hearsay? I'm sorry, Your Honor. The district court, as I understood it, suggested that, or said that the evidence of post-October 2017 incidences was an admissible hearsay. Why is that wrong? Well, this is the fall of 2018, Your Honor. Right. Anything post-October 2017 that was before the district court judge, the district court judge concluded that it was an admissible hearsay. So, that would certainly include the 2018 complaint of retaliation to the OEO. Why is the district court wrong? I'm not sure I understand the question, Your Honor. The hostile work environment claim is a claim where you need to have at least one act in the statute of limitations period, but the prior acts can be brought in. With respect to the retaliation complaint, the retaliation complaint all relates to stuff that happened in 2018. In 2018, he is being retaliated for filing the complaint. And what do we do about the allegation that it was an admissible hearsay? Because he is saying that somebody else said something to him, and the truth of it matters a lot. Well, with respect to what he's testifying to, his testimony is obviously subject to cross-examination. So, you're saying the district court was wrong? The statement that is being made is a party admission. I mean, this is the decision-maker from NYU. That's a party admission. You can always testify about what a party said. Yeah, I'm just trying to ask, your position is that the district court was wrong? Yes, Your Honor. Can I, I'm trying to sort of, the way this argument has been carved up is the sort of interim decision and then the final hire. And I think the way these interact in the real world is that Dr. Elchar's hope would be that he would be tapped as the acting, and then that would blossom into the final decision. If we conclude that once NYU opened it up for a search and hired the candidate that they did, if we conclude that the rationale for hiring a different candidate from Dr. Elchar for the chair position was not pretextual, or there's not sufficient evidence to create genuine dispute as to whether that was pretextual, what does the interim decision get? Is it just a measure of damages for the three years of interim or two years of interim service that he would have gotten? Or what, how does that fit together? I think it fits together in two ways. First, there is the interim period where he would have been chair, or acting chair or interim chair. Second, that would have put him in a position to become the chair. Third, when they set up this procedure that had never been done before, we think that procedure itself the jury could find was pretextual. Right. I understand that. But when you say that would have put him in a position where he could have become the chair, he was still in a position where he could have become the chair. He was part of the search. He was a finalist. And so I'm partly just exploring whether your theory as to what happened at the interim stage sort of has a tail that extends into the final selection process. And that's what I'm just struggling about. I think it has two aspects. One is the interim period itself he's deprived of. Second, I think a jury could find in depriving him of that interim period set up his deprivation of the final decision. And in addition to that, I think a jury could find that the procedure that they set up, which had never been done before, and essentially threw this back to the people who had been discriminating against him, was itself pretextual. So how many of the people that were asked to respond to the survey were people who had been identified in OEO complaints as having engaged in discriminatory conduct before? Well, I think when you're talking about this unprecedented procedure, throwing it back to the very people who were discriminating, I was trying to drill down on that and, based on the record, ask you, how many of the 70 people that received the survey were actually people who had been identified as discriminators in the prior OEO complaint? You're right. I don't have the answer to that. I'll try to find that out in the interim. Can I just say one thing about our hostile work environment? This is a situation, again, where they cite no case and I'm aware of none, where the defendant has actually admitted that there was a hostile work environment, that that hostile work environment continued into the statute of limitations period. I want to be sure I'm clear on the point you're just trying to make. Rehearse that admission for me. Sure. That was in the decision by the OEO in February 7, 2018, and it says the complaint of conduct by multiple faculty members, particularly in the presence of NYU students, is sufficient to create an, quote, Accordingly, there is evidence to support complainants' collective allegations of a hostile work environment. That was in 2018 in February. So can you tell me what incidents within the limitation period you are specifically relying on to show a continuing violation? Well, first, the report itself is in the statute of limitations period. That's in 2018. So the report describing a hostile work environment is in the statute of limitations period. Now, in addition to that, in the fall of 2018 was when Dr. El-Char was told that he was not, they were not going to post this position because he had made a complaint. That certainly is a hostile work environment. Then in July of 2019, Dr. El-Char writes a letter to the dean saying about how nothing has changed. There continues to be a campaign waged against me on the basis of my ethnicity and religion. That's in 2019. So is his complaint enough to bring the hostile work environment claim into the limitations period, or is it that of which he's complaining needs to have an act that brings it in? It is the latter, Your Honor. Okay. What he's complaining about has got to be in the period. So where are the complaints of conduct within the limitations period that are going to bring that claim forward? He testifies in his deposition, and I'll get the citations for the court, about things not changing and the discrimination continuing. In addition to that, the record is clear that there was no investigation or no action taken with respect to this complaint. Now, I understand that the court has ruled that if you making a complaint is not by itself enough, if the complaint is only about the same conduct. Here, what you have is a complaint about continuing conduct that had already been found by the OEO, and this is a situation in which when they do nothing about it, they do not even now investigate it the second time. That certainly continues the hostile work environment. So I know we're going to get to hear from you again. I'm just going to ask during the interview if you can drill down on that last thing you said and come back with the specifics because I think there may be a difference between a generic statement of the bad stuff is continuing and here are some examples of the bad stuff that is continuing. I'd love to hear the second. So thank you, and we'll hear now from Attorney Freedfeld. Yes, Your Honor. Good morning. May it please the Court. My name is Susan Freedfeld, and I represent Defendant Appelli, New York University. Appellant's arguments fail for multiple reasons. First, the evidence is insufficient to establish that he would have been interim chair or that he would have been permanent chair but for his complaint to OEO, and that is the standard. Second, with respect to his claims of hostile work environment, as the Court has noted, he fails to identify any actual harassing conduct that occurred during the limitations period. He says that inaction is enough. Is that wrong, inaction in the face of complaints? Is that wrong? The complaint that he made was general, claiming that just things were continuing, and even at his deposition, he was not able to identify a single incident in which somebody had engaged in actually harassing behavior. So there's no evidence in the record that there was harassing behavior, and the fact that he made a complaint that things are just continuing, it's the same old, same old, is not sufficient. The university had already investigated his claims that in the past there had been misconduct, and there is no evidence that there was further misconduct. Okay, and what do we do about how I understand his theory that the complaining of the retaliation should be considered an extension of the harassment, and because of the nature of the testimony and what's involved, it's not an admissible hearsay? Tell me why the District Court was right to say that he only induced the additional evidence post-October of 2017 was inadmissible. First, with respect to the hostile environment, the allegations that he made as to harassing conduct included him being told by other people that they had heard that Dr. El-Char was anti-Semitic. So that's third-hand, so it's clearly not admissible. Not to mention the fact that accusing somebody else of harassment is not per se harassing, discriminatory harassment, harassing conduct. Second, with respect to the interim chair piece and the failure to investigate, the retaliation claim is a discrete act. The case law is clear that you can't bring a discrete act into a hostile environment to create a continuing violation, and here it was not a claim of... Well, you can if it's part of the continuing course of conduct. That was King v. Aramark. Yes, but this is not a continuing course of conduct. It's a different actor. Well, in other words, if the discrete act had been the same in type or had been undertaken by the same person, for instance, who was driving the underlying continuing course of harassment, it may be both a discrete act for the purposes of a discrimination claim based on that act, and it may be part of the continuing course of conduct that brings the harassment claim into the statute of limitations. It could, Your Honor, if, as you said, it was a continuing pattern of behavior, but here it was not a continuing pattern of behavior. So I want you to articulate why not, right? So I'm glad that you're not going overbroad, but he is asking us to decide that the discrete act triggering the retaliation claim is part of a continuance of the hostile work environment. Why is that wrong? Because Dean Bertolami is the person who made the decision as to whether to fill the interim, whether to appoint Dr. Elchar as interim chair and as to the permanent chair. There is no allegation, or has there ever been any allegation, that Dean Bertolami has ever engaged in any discriminatory conduct toward Dr. Elchar based on his ethnicity or his race. The conduct that he alleged was discriminatory happened years prior, and frankly, most of the individuals who were accused of misconduct were no longer even in the department. To answer the earlier question, of the 77 people who were surveyed, only two were still in the department. Only two of the people he had accused of discrimination were still in the department, and the main instigator, as Dr. Elchar called him in his testimony, or in his conversation with Dean Bertolami, they had made peace. Everything was fine with them. So that's one person left that he had a dispute with out of 77. Let me ask you this. Why isn't the department chair's statement to Dr. Elchar that you would have gotten the job but for your complaint sufficient to show at least prima facie retaliation? Well, I think the lower court found that it was sufficient to find prima facie retaliation, but I think the issue here is that the university put forth a very clear non-discriminatory, non-retaliatory reason for the decision, and there isn't sufficient evidence that but for the complaint, he would have been the interim chair. Here, there's overwhelming evidence that in all circumstances in which a large department has a chair vacancy in which they do not have time to fill the seat before the person leaves the university, they have appointed an interim chair from an administrator from outside the department. There's only one exception in the record, and that was a very small department in which the faculty was universally agreed that an individual who should be the interim chair, which was not the case here. There's a subtle shift there as I'm understanding the politics of this because it's not always the case that there is an interim director. Sometimes there's an acting director, and then that director becomes the director. It's not always the case that an interim director is appointed at all. At least I didn't see evidence. I saw evidence that if there is an interim director, this is how they structure it. Am I making a distinction that doesn't exist in the record? Yes, Your Honor. In the one department where there was somebody from inside the department in orthodontics, there was somebody from inside the department who was appointed interim because the faculty universally said that that's what they wanted. And so that individual became the interim chair for a period of time. Then they began a search and then determined that the outside applicants were not better than the internal person, and then they selected him to be the chair. So going back to sort of stepping back from that, sometimes the same evidence that satisfies the prima facie case of discrimination or retaliation is clear enough that it's enough to overcome the, at least create an issue of fact as to whether the reported non-discriminatory reason for a decision was in fact a pretext. The statement, but we are not appointing the chair because of your complaint to OEO, seems like a fairly strong piece of evidence that they weren't appointing him chair in response to his complaint to OEO. Why isn't that enough? You may disprove it, that it was even said, let alone that it was the reason in a fact-finding setting, but why isn't that enough to at least raise a dispute, a genuine dispute as to whether the non-discriminatory reason is potential? Because there is no dispute that in all the other circumstances in large departments, an interim chair from outside the department was selected. Okay, but here the decision maker has said, this is why I'm not appointing you, you should be appointing acting chair, but now because of your complaint, we're going to have to bring someone else in to calm things down. There was also other complaints and other issues of the department. There were other causes of conflict that had nothing to do with his OEO. I understand that. There's all sorts of explanations for why this made sense for the structure of the governance. I'm really trying to figure out where the evidence is so clear that we can rule as a matter of law, and I'm trying to figure out how we can overcome the alleged statement, we are not appointing you chair because of your complaint to OEO, which is about as stark and unequivocal as it gets. Well, here the other evidence in the record establishes that the motivation of the dean was not to harm Dr. Al-Jarrah, but it was in fact to help him. So if you don't appoint them because they filed a complaint, but you're doing it with beneficent motives, does that negate the retaliatory nature of the decision? I think it does in this circumstance because Dean Bertolami, in the recorded conversation, he explains to Dr. Al-Jarrah that that was his intent all along. It was surreptitiously recorded. The question I have is who is the one that decides that that's his intent? Isn't that the question that's for the jury? I mean, we're not here trying to prove they did it, they didn't do it. We're trying to figure out if this should go to trial and let the fact finder, why isn't the statement enough to at least let a jury figure out if it was actually for political reasons or because of retaliation? There is no evidence in the record that, other than that statement, there is no other evidence in the record of a malevolent. I mean, he had sworn testimony. That's evidence, right? Sworn testimony is evidence. Yes, Dr. Al-Jarrah's testimony is certainly evidence, Your Honor. And I also want to address the permanent chair position. I think it's very clear in the record that there were legitimate, nondiscriminatory reasons for the decision to select Dr. Palomo as the chair there. So can I ask, do they rise and fall together? If we decide that there was an inappropriate grant of summary judgment on the interim chair, do we have to reach the same conclusion on the permanent chair? No, Your Honor. Okay, tell me why we could think about them differently and still be intellectually coherent. Dr. Al-Jarrah's opportunity to be named permanent chair was not inhibited by the fact that he was not the interim chair. In fact, he was in the same position as all the other faculty in the department. There were at least two other faculty within the department who also applied for the chair position. And he was in the same position as he would have been had he been interim chair. My question, again, it's like what is the legally significant difference that would make us feel like we could decide one way on one of them and not the same way on the other? What evidence is different? What statements of proof is different? What do we have to not have them rise and fall together? It's undisputed in the record that he was the second choice based on non-discriminatory factors. It's undisputed in the record that the first choice was the first choice based on the fact that she had tenure, that she had other experience, that she was a more qualified candidate. But it's not disputed, it was admitted in the 56.1 statement. Full professor, right? Yes, he was a tenured full professor. Further, to the extent that you could even infer any type of retaliatory animus from the fact that he wasn't selected, it's no dispute that he would have been, that he was the second choice, that they would have made him the chair had Dr. Palomo declined it. There were two other finalists. If they wanted to retaliate against him, they could have chosen one of the other finalists, but it's not disputed that he was the second choice. Your colleague has argued that had he been placed as interim chair, that would have completely changed the framework for the deciding the actual permanent position. I think they would argue they would have put him in a better position, you can imagine, or put him in a worse position depending on how he conducted himself as interim chair. But are they entitled to spin out that argument? If we rule against you on the interim position, is that argument enough to sort of overcome what you've described as the case for affirming on the permanent issue? No, Your Honor, because it's entirely speculative, and there is a requirement at the university that Dean Berlanti even explained to Dr. El-Tar at the time when he was asking him if he thought it was a good time for him to go through the search process, that under the equal employment opportunity rules, they had to conduct a search. So there was no scenario in which he was just going to be anointed the chair. And so I think part of the argument is it sounds like from the Zoom conversation that he would be considered favorably in the future. Is that part of your argument? Yes, that was clearly what Dean Bertolami said to him. He said, I think you're going to be the best candidate. I think that you're, you know, I can't make you any promises because I don't know who's going to apply, but in my mind, I think you're great. And he went out of his way to make sure that nobody on the search committee had ever had any conflict with him, not just people who had been accused of discrimination, but people who hadn't had conflict. Are we the ones that decide that the reason was that he didn't get it was because he was the second best, or is a jury supposed to decide that the reason he didn't get it was because he was the second best versus being discriminated against? The case law in the circuit is clear that the employer is entitled to deference as to its judgment of what is an important, what makes somebody qualified for a position. And here they cited clear, nondiscriminatory, legitimate reasons. That, again, in the 56.1, the doctoral charge did not dispute. Right. I guess we need a separate, arguably a separate piece of evidence as to discrimination, discriminatory intent, or retaliatory intent as it related to the final decision. So why isn't, tell me about this, your response to this argument that, well, you put it up to a vote, right? You invited people to, people who inhabit the very environment that gave rise to my hostile environment claim. You gave them the vote as to whether or not I'd be placed as chair. Why isn't that the act that sort of gives you a plausible claim for or a viable claim for retaliatory hiring? Well, first, Dr. El-Tar testified that he, I'm sorry, Dean Bertolami testified that he did the survey in part because if the faculty overwhelmingly said they really wanted Dr. El-Tar to be their chair, that he would have considered that fact and it perhaps could have changed his opinion. So it wasn't necessarily that he was, there's no evidence that he was looking to harm Dr. El-Tar. Second, as I mentioned earlier, there were 70, over 70 people in the department who were surveyed and only one of them allegedly still had a conflict with Dr. El-Tar. And the allegations that form the basis of the hostile environment claim stretched all the way back to the 90s. So this is, and a lot of those people had already, had passed away or had retired or were no longer at this institution. I think we take it now. Thank you. I really appreciate your arguments and we'll hear again from Mr. Boyce. Thank you, Your Honor. Let me begin with what counsel was just talking about. They can argue to a jury that somebody else would have been picked, even in the absence of the discrimination. But given the evidence that's in the record, this is clearly, I submit to the court, a jury question. So, but why? What's the piece of evidence that gives the jury any basis for inferring retaliatory or discriminatory motive as to the hiring of a final chair? They've had an open process, they've brought people in. I don't see any allegation of any impermissible consideration. It seems like you're hanging your hat on the process of doing the survey. Is that? Well, I think it's partly that. It's partly doing a survey and I think Dr. Bloom and Dr. Warren, I think there was more than one of the people who were actively attacking Dr. El-Char who were surveyed. But all of the people who were being surveyed were people who had been subjected to this hostile attack. Throughout the period leading up to this period, he was called a camel jock, a terrorist. But not throughout this period, right? Do we have any evidence that, I mean, those were quite old allegations. They were pre-statute of limitations, although, for example, I've asked the court to look at appendix 257 and 258 for more recent things. But the point, Your Honor, is that even though these things happened in the past, they are affecting what these people think and believe going forward. I can see that as to the people who were alleged to have said and done things in the past, but it sounds like what you're saying is a substantial portion of these 77 people, none of whom were specifically ever alleged to have said or done anything hostile, that a jury could infer that they bore hostility, unspoken, I guess, unexpressed hostility to him? Not necessarily that they were being hostile themselves, but their views about Dr. El-Char are certainly influenced by the kinds of things and although it's prior to the statute of limitations, the National Railroad Passengers Corporation decision by the Supreme Court is clear that you can take those things into account if there's any act in the statute of limitations period. Now you're talking about the harassment, and what I'm really getting at is the, what basis is there to think that the failure to hire him, which is a discreet act claim, was discriminatory or retaliatory? And I'm just looking for what your pieces of evidence are, and it sounds like you're saying the history of hostile work environment allegations and the use of the survey. I think those are the two things. I think those are the two things, and the deprivation of him, his ability to be interim chair. Okay. And we're saying that's enough to go to the jury. Now, with respect to the hostile work environment, I also want to just emphasize. I'm sorry, can we go back to the chair question? Can you respond to your colleague's argument that in paragraph 183 and in paragraph 186 you didn't dispute that he would have been offered the chair position if Dr. Colombo had been rejected and denied the position and that your client was rejected for promotion because he was emotional and divisive and used terms like friends and enemies to describe the faculty environment? We do not accept that that was the reason he was rejected. Okay, and you said plaintiffs do not dispute this statement, but further avert that Dean Shriver said that tenure was not required, and then you said on 186 plaintiffs does not dispute this statement. So what do we do with that in the 56.1 position? Which is why I thought the survey became the theory. So I just want to figure out. That's why I thought your theory of the injury was because they constructed a survey for the. Well, I think that's part of it, Your Honor. I think if the survey had come back in his favor. So let me just ask you, what do I do about the fact, or what do we do about the fact that in your 56.1 you say plaintiffs do not dispute as to 183 and 186? I don't think those are, I don't think those is inconsistent with what we're arguing now, Your Honor. If the survey had come back in favor of him, he would have been very possibly, we don't have evidence of this, he very possibly could have been selected. But what we are arguing is that the survey was a unique situation. We also argue that he would not have had the survey if he had gotten the interim position. If he had had the interim position, that would have affected how people reacted to him. Although I suppose we'd be speculating to decide whether that would be a favorable impact or an unfavorable impact, right? It is, Your Honor. But that's one of the factual issues that I think we're entitled to argue to the jury as to whether he was deprived of the ability to have that. I mean, for example, if somebody, if they post a series of positions and they deprive somebody of the ability to apply for that position, that's an adverse employment action, even if there's no evidence at all as to whether he would be qualified or could accept that position. And so not appointing him as interim chair is tantamount to not allowing him to qualify for the position? Yes, Your Honor. Okay, all right, I think we take your argument. Thank you very much. I think we probably can move on. I appreciate it. Thank you. Thank you very much, Your Honor. We'll take the case under advisement.